**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| MARSHALL HOUSER, AIMEN HALIM, BARBARA FORTE, TONIA MCCONNELL, DEAN SLEGER, RICHARD ANELLI, and JOANNE BARRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX CONSUMER PRODUCTS, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Marshall Houser, Aimen Halim, Barbara Forte, Tonia McConnell, Dean Sleger, Richard Anelli, and Joanne Barrett ("Plaintiffs"), by and through their undersigned counsel, on their own behalf and on behalf of all other persons similarly situated, sue Defendant Electrolux Consumer Products, Inc. ("Electrolux" or "Defendant") and for this Complaint allege as follows:

## INTRODUCTION

1. The kitchen is the heart of the American home, and a key appliance in every kitchen is a gas or electric cooking range. Most homeowners would never expect the calm of their kitchen to be shattered—literally—by their oven. Yet this is exactly what's happening with Electrolux's Frigidaire-branded ranges. Hundreds of consumers nationwide have reported a latent defect, wherein the outer glass of the oven of their Frigidaire range suddenly shatters or even explodes without warning or clear cause (the "Defect"). These incidents are often as loud as a gunshot, sending hot glass shards flying several feet.

2. Online forums and news articles trace the Defect with Frigidaire-branded ranges back to around 2011. Strikingly, after nearly 14 years and hundreds of complaints posted online or filed directly with governmental entities, Electrolux continues to manufacture Frigidaire ranges with the Defect and refuses to issue a recall on the impacted Frigidaire ranges or reimburse consumers who have already experienced the manifestations of the Defect or are reasonably in fear of the Defect manifesting.

3. Plaintiffs and the Class (as defined below) are purchasers of Frigidaire-branded ranges, which are manufactured, marketed, distributed, and sold by Electrolux without disclosing to consumers that the Frigidaire ranges' outer glass on the oven door has a propensity to shatter or explode without any misuse or forewarning.

4. The Defect poses a serious safety hazard to consumers, their children, and pets and a risk to personal and real property. Furthermore, due to the significant risk of explosion in their kitchen, Class members are deprived of the use of their Frigidaire ranges.

5. The Defect is the result of uniform flaws in materials and/or workmanship.

6. Plaintiffs are informed and believe that as a result of Defendant's extensive pre-sale testing, the Defect was known to Defendant prior to introducing the Frigidaire ranges with the Defect into the marketplace. Defendant has since had exclusive, or superior, knowledge of the Defect due to customer complaints, warranty claims, repair orders, and orders for replacement windows.

7. Defendant concealed the fact that Frigidaire ranges contain a serious safety hazard and risk to property and marketed its products as reliable, safe, and of high quality. Plaintiffs and Class members reasonably relied on Defendant's marketing and representations in purchasing Frigidaire ranges. As a result of Defendant's deception, Plaintiffs and Class members were

deprived of the benefit of their bargain.

8. To redress the harms to Plaintiffs and Class members, Plaintiffs bring claims for common law fraud, violations of the North Carolina Unfair and Deceptive Trade Practices Act, the South Carolina Unfair Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Connecticut Unfair Trade Practices Act, the Virginia Consumer Protection Act, the Wisconsin Deceptive Trade Practices Act, breaches of express and implied warranties, fraudulent omission or concealment, unjust enrichment, and declaratory relief.

9. As a result of Defendant's conduct, Plaintiffs and Class members have suffered an ascertainable loss of money and/or property, and/or loss in value. Class members have been forced to spend time and money purchasing replacement parts and hiring technicians for repairs and have lost the use of their Frigidaire range while waiting for a repair.

10. The allegations in this Complaint are based on personal knowledge as to Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel. These allegations will likely have further evidentiary support after a reasonable opportunity for further investigation or discovery.

## PARTIES

### Plaintiff Marshall Houser

11. Plaintiff Marshall Houser is an adult citizen and resident of Lincolnton, North Carolina. In or about 2020, Plaintiff Houser purchased a Frigidaire range from Lowe's Home Improvement in Lincolnton, North Carolina.

12. In July 2025, the outer glass of the oven door of Plaintiff Houser's Frigidaire range spontaneously exploded, blasting shattered glass throughout his kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of his range.

13. Plaintiff Houser reached out to Defendant's customer service to inquire whether his Frigidaire range would be repaired, or the cost of repair reimbursed, under the warranty. They informed him that this was not a covered incident under the warranty and offered to replace the outer glass of the oven door for $320.00, parts and labor included.

14. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of his Frigidaire range purchase, Plaintiff Houser also was not informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff Houser purchased it.

15. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff Houser purchasing his Frigidaire range, he would not have agreed to purchase the Frigidaire range or would have paid less for it. As a result, Plaintiff Houser received less than what he paid for and did not receive the benefit of his bargain.

**Plaintiff Aimen Halim**

16. Plaintiff Aimen Halim is an adult citizen and resident of Chicago, Illinois. In or about 2016, Plaintiff Halim purchased a Frigidaire range from Best Buy in Chicago, Illinois.

17. In 2019, the outer glass of the oven door of Plaintiff Halim's Frigidaire range spontaneously exploded, blasting shattered glass throughout his kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of his range.

18. Plaintiff Halim contacted a local handyman and scheduled a repair of the broken glass. Plaintiff Halim paid $300.00 out-of-pocket for the parts and labor for the repair.

19. Plaintiff Halim reached out to Defendant's customer service to inquire whether the cost of repair would be reimbursed under the warranty. They informed him that his one-year warranty had already expired.

20. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of his Frigidaire range purchase, Plaintiff Halim also was not informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff Halim purchased it.

21. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff Halim purchasing his Frigidaire range, he would not have agreed to purchase the Frigidaire range or would have paid less for it. As a result, Plaintiff Halim received less than what he paid for and did not receive the benefit of his bargain.

**Plaintiff Barbara Forte**

22. Plaintiff Barbara Forte is an adult citizen and resident of Brooklyn, Connecticut. In or about 2020, Plaintiff Forte purchased a Frigidaire range from Steve Bousquet's Appliance & TV in Danielson, Connecticut.

23. In or around January 2025, the outer glass of the oven door of Plaintiff Forte's Frigidaire range spontaneously exploded, blasting shattered glass throughout her kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of her range.

24. Plaintiff Forte reached out to Defendant's customer service to inquire whether her Frigidaire range would be repaired, or the cost of repair reimbursed, under the warranty. They informed her that this was not a covered incident under the warranty.

25. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of her Frigidaire range purchase, Plaintiff Forte also was not informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff Forte purchased it.

26. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff Forte purchasing her Frigidaire range, she would not have agreed to purchase the Frigidaire range or would have paid less for it. As a result, Plaintiff Forte received less than what she paid for and did not receive the benefit of her bargain.

**Plaintiff Tonia McConnell**

27. Plaintiff Tonia McConnell is an adult citizen and resident of Columbia, South Carolina. In or about 2018, Plaintiff McConnell purchased a Frigidaire range from Lowe's Home Improvement in Columbia, South Carolina.

28. In or about May 2024, the outer glass of the oven door of Plaintiff McConnell's Frigidaire range spontaneously exploded, blasting shattered glass throughout her kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of her range.

29. Plaintiff McConnell reached out to Defendant's customer service to inquire whether her Frigidaire range would be repaired, or the cost of repair reimbursed, under the warranty. They informed her that this was not a covered incident under the warranty.

30. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of her Frigidaire range purchase, Plaintiff McConnell also was not

informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff McConnell purchased it.

31. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff McConnell purchasing her Frigidaire range, she would not have agreed to purchase the Frigidaire range or would have paid less for it. As a result, Plaintiff McConnell received less than what she paid for and did not receive the benefit of her bargain.

**Plaintiff Dean Sleger**

32. Plaintiff Dean Sleger is an adult citizen and resident of Manitowoc, Wisconsin. In or about April 2022, Plaintiff Sleger purchased a Frigidaire range from Lowe's Home Improvement online.

33. In September 2025, the outer glass of the oven door of Plaintiff Sleger's Frigidaire range spontaneously exploded, blasting shattered glass throughout his kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of his range.

34. Plaintiff Sleger reached out to Defendant's customer service to inquire whether his Frigidaire range would be repaired, or the cost of repair reimbursed, under the warranty. They informed him that this was not a covered incident under the warranty.

35. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of his Frigidaire range purchase, Plaintiff Sleger also was not informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff Sleger purchased it.

36. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff Sleger purchasing his Frigidaire range, he would not have agreed to purchase the Frigidaire range or would have paid less for it. As a result, Plaintiff Sleger received less than what he paid for and did not receive the benefit of his bargain.

**Plaintiff Richard Anelli**

37. Plaintiff Richard Anelli is an adult citizen and resident of Richmond, Virginia. In or about 2023, Plaintiff Anelli purchased a Frigidaire range from Home Depot.

38. In October 2025, the outer glass of the oven door of Plaintiff Anelli's Frigidaire range spontaneously exploded, blasting shattered glass throughout his kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of his range.

39. Plaintiff Annelli reached out to Defendant's customer service to inquire whether his Frigidaire range would be repaired, or the cost of repair reimbursed, under the warranty. They informed him that this was not a covered incident under the warranty. Plaintiff Annelli paid $112.00 to replace the outer glass of the oven door.

40. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of his Frigidaire range purchase, Plaintiff Annelli also was not informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff Annelli purchased it.

41. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff Annelli purchasing his Frigidaire range, he would not have agreed to purchase the Frigidaire range or would have paid

less for it. As a result, Plaintiff Annelli received less than what he paid for and did not receive the benefit of his bargain.

**Plaintiff Joanne Barrett**

42. Plaintiff Joanne Barrett is an adult citizen and resident of Virginia Beach, Virginia. In or about June 2022, Plaintiff Barrett purchased a Frigidaire range from Home Depot.

43. In October 2025, the outer glass of the oven door of Plaintiff Barrett's Frigidaire range spontaneously exploded, blasting shattered glass throughout her kitchen. There was no warning that the explosion could happen, no cracks in the glass, warping of the door, or any other issue with the functionality of her range.

44. Plaintiff Barrett reached out to Defendant's customer service to inquire whether her Frigidaire range would be repaired, or the cost of repair reimbursed, under the warranty. They informed her that her one year warranty had already expired.

45. Defendant's website and warranty manual for the Frigidaire range make no mention of the Defect. At the time of her Frigidaire range purchase, Plaintiff Barrett also was not informed by Defendant of the Defect. The Defect was not disclosed on the range label or elsewhere on the range at the time Plaintiff Barrett purchased it.

46. Had Defendant disclosed the Defect on its website, in its warranty manuals for the Frigidaire ranges, on the range label, or elsewhere, prior to Plaintiff Barrett purchasing her Frigidaire range, she would not have agreed to purchase the Frigidaire range, or would have paid less for it. As a result, Plaintiff Barrett received less than what she paid for and did not receive the benefit of her bargain.

**<u>Defendant Electrolux Consumer Products, Inc.</u>**

47. Defendant Electrolux Consumer Products, Inc. is a designer, manufacturer, marketer, advertiser, distributor, and seller of Electrolux and Frigidaire branded home appliances. Electrolux is a Delaware corporation with its principal place of business located in Charlotte, North Carolina

## JURISDICTION AND VENUE

48. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this matter is brought as a class action pursuant to Fed. R. Civ. P. 23, the proposed class includes more than 1,000 members, the class contains at least one member of diverse citizenship from Defendant, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

49. The Court has personal jurisdiction over Defendant because Defendant maintains a principal place of business in this District, and Defendant has made sufficient contacts in this District, including the marketing, distribution, and sale of home appliances, including Frigidaire-branded ranges.

50. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events, acts, and omissions giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Overview of Electrolux

51. Founded in 1919 in Sweden, Electrolux AB is one of the world's leading manufacturers of household and professional appliances.[1] Electrolux AB conducts business in the

---

[1] *History of the creation of Electrolux – a Swedish manufacturer of household appliances*, Home-comfort, https://home-comfort.com/promo/brand/ (last visited Feb. 12, 2026).

North America region through its wholly owned subsidiary Defendant Electrolux Consumer Products, Inc., headquartered in Charlotte, North Carolina. In 2024, Electrolux had sales of $4.8 billion in the North American region, equivalent to 33% of total sales. The main brands in the region are Frigidaire and Electrolux, which are sold through electronics and kitchen retailers and direct to consumers.

52. The Frigidaire brand is similarly long standing, operated by General Motors from 1918 through the 1970s. Electrolux acquired the Frigidaire brand in 1986, and since that time has advertised, manufactured, and sold various home appliances under that brand name to the United States market.[2] Electrolux offers a wide range of kitchen and home appliances under the Frigidaire brand name, including refrigerators, wall ovens, dishwashers, microwaves, freezers, air conditioners, and ranges, including those at issue in this lawsuit.

**B. Defendant Touts Frigidaire Ranges' Reliability**

53. Electrolux markets its Frigidaire appliances cognizant of the brand's long history in America, touting on its website: "For more than 100 years, Frigidaire has been there with innovations designed to fit your family's needs. Come see all that Frigidaire has to offer."[3]

54. With regard to Frigidaire ranges, Electrolux describes them as "designed to elevate your cooking experience with top performance and reliability."[4]

55. Further, it frequently describes them as the "#1 consumer rated line of cooking appliances," for example in the below[5]:

---

[2] *The History of Frigidaire*, Appliance Zone (May 18, 2016), https://www.appliancezone.net/blog/the-history-of-frigidaire/?srsltid=AfmBOoqsz9eZrep8NK.
[3] Frigidaire Home Page, https://www.frigidaire.com/en/ (last visited February 16, 2026).
[4] Frigidaire, https://www.frigidaire.com/en/kitchen-appliances/ranges (last visited February 16, 2026).
[5] *Id.*




56. Defendant also includes purported customer comments on its website praising the workmanship of the Frigidaire ranges like the following[6]:




57. As explained in this Complaint and contrary to the advertisements, the Frigidaire ranges are not reliable due to their inferior quality.

**C. Defect in the Outer Oven Glass of Frigidaire Ranges Causes Explosions**

58. Class member experiences and reports have shown that the glass oven door of Frigidaire ranges have a propensity to shatter, or even explode, under normal use. These incidents are reported to occur without warning or visible symptoms. In fact, many owners, like Plaintiff Forte, report that their range was not even in use, i.e. cold, when the glass exploded. These explosions are often as loud as a gunshot and, if the range is in use, cause hot shards of glass to

[6] *Id.*

fly several feet away from the range.

59. Upon information and belief, this Defect manifests regardless whether the Frigidaire range is gas or electric. Post manifestation of the Defect, consumers are no longer able to use their Frigidaire ranges because the temperature inside the oven can no longer be sustained at a level necessary to cook. As such, the Defect renders the oven, a core function underlying the consumer's purchase of the Frigidaire range, useless.

60. Upon information and belief, this Defect is caused by common failures in material and/or workmanship. Specifically, Plaintiffs allege that impurities in the glass render the ranges' oven windows susceptible to sudden breakage. In addition, Defendant included in the range significantly weaker materials due to their cheaper raw material and manufacturing costs which rendered the Defect's manifestation a more common occurrence.

61. Each of the Frigidaire ranges contain common design and/or manufacturing defects that can and have caused the glass on its doors to break or shatter. Specifically, glass used in the ovens suffers from a uniform defect whereby it cannot withstand the high temperatures that are common when the ovens are used for their ordinary purpose, such as cooking, resulting in the breaking or shattering of the glass-front door under normal and foreseeable use by consumers.

62. Electrolux expressly and impliedly warranted, via user manuals, marketing, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Frigidaire ranges are fit for the ordinary purpose for which such goods are used, including safely cooking food.

63. Electrolux also expressly warranted that, for a period of one year from the date of the original purchase, it would provide, free of charge, all labor and related service costs to

replace any defective parts of the Frigidaire ranges that fail due to defects in materials or workmanship.

64. Electrolux's warranty expressly applies to the original purchaser and any succeeding owner of the Frigidaire ranges, creating privity between Electrolux on the one hand, and Plaintiffs and Class members on the other.

65. Unknown to consumers, but known to Electrolux, the Defect in the glass windows of the ovens exists at the point of sale to consumers, and renders the ranges unfit for the ordinary purpose for which they are sold.

66. As a result of the Defect, the ranges pose an unreasonable risk of harm to consumers and their property.

67. The expected service life of the ranges should be approximately 13 years and Plaintiffs and consumers expect that the ranges will last that long.[7] However, the range is prone to premature failure before the end of its expected service life due to the Defect.

68. The Defect is also invisible until it has manifested, making it impossible for consumers to identify the ranges as defective prior to purchase. Moreover, Electrolux knows or should have known that the Defect typically manifests after the expiration of Electrolux's warranty, but far prior to the end of the expected service life of the ranges.

69. Accordingly, the ranges are defective at the point of sale. Consumers could not reasonably know about the Defect at the point of sale and could not discover the Defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a

---

[7] *How Long Do Appliances and Parts of Your Home Last*, This Old House (October 15, 2024), https://www.thisoldhouse.com/21018361/how-long-things-last. (average lifespan of electric range is 13 to 15 years, average lifespan for a gas range is 15 to 17 years) ((last visited February 16, 2026).

consumer would not reveal whether the materials of the range, the design of the range, and/or the manufacturing processes related to the range render them unsafe for normal and expected use.

**D. Defendant's Knowledge of the Defect**

70. Plaintiffs are informed and believe that Defendant was knowledgeable about the Defect prior to the sale of the Frigidaire ranges in the marketplace. Prior to the sale of the Frigidaire ranges, Defendant knew of the Defect through, or as evidenced by, rigorous pre-release testing, service center data, replacement parts sales data, early consumer complaints made directly to Defendant and/or posted on public online forums, product testing, including testing performed in response to consumer complaints, and other internal sources unavailable to Plaintiffs without discovery.

71. At the same time Defendant was selling the Frigidaire range to Plaintiffs and the public, Defendant was aware of the problems with the Frigidaire ranges, both from the internal validation and testing that Defendant performed and from its past experience and expertise with other glasses in ovens.

72. Oven windows perform an important role in insulating and regulating oven temperature while allowing users to have visibility into the oven. However, glass components in ovens arguably constitute one of the more vulnerable parts of a range for breaking and causing injury. Thus, windows require the special attention of the manufacturer to guarantee function, reliability, and safety over a long period of time—this is readily obvious to qualified engineers and well known to the Defendant.

73. Defendant requires that each range component be tested for durability and functionality before production. Defendant employs teams of engineers or specialists whose work is focused on testing the functionality of its ranges and their components, and these individuals are

responsible for guaranteeing full range and component performance for durability requirements.

74. As part of the range production preparation phase, manufacturers seek to assure long-term reliability through aggressive durability and performance testing, and oven glasses are subjected to rigorous regimens of testing before beginning mass production to ensure there are no quality issues.

75. Prior to sale, Defendant tests the Frigidaire ranges by simulating the different scenarios that may materialize in household conditions. Defendant performs this type of testing to observe the short and long-term effects of use in these conditions on the functioning of the Frigidaire range, and to determine and understand how different factors will impact performance. This testing, and other similar testing, is intended to ensure the Frigidaire ranges and their component parts will last their full life cycle and function properly during that period. During this testing, Defendant would have or should have identified the issues related to the Defect.

76. Because the Defect is not apparent to consumers from inspection of the Frigidaire ranges during installation, or after installation and use begins, the Defect was known only to the Defendant.

**E. Consumer Complaints Further Support Defendant's Knowledge of the Defect**

77. Defendant's apparent knowledge of the Defect is supported by or inferable from the many consumer complaints available online. These publicly accessible complaints, and their descriptions of the Defect, alerted or should have alerted Defendant to this serious defect affecting a wide variety of its Frigidaire-branded ranges.

78. The full universe of complaints made directly to Defendant about the Defect, including warranty claims, is information presently in the exclusive custody and control of Defendant and is not yet available to Plaintiffs prior to discovery. However, upon information and

belief, many consumers complained directly to Defendant and authorized distributors about the Defect and resulting issues experienced.

79. For example, some instances of these direct-to-Defendant complaints are described in consumers' complaints posted on third-party online forums[8]:



sissytoo · 1y ago

Mine exploded last night. About 4.5 yrs. old. I was baking something, was about done. I heard an explosion and went to the kitchen and the outside glass had burst and glass everywhere. I live alone, so I know has had no damage to cause this. It seems to be an issue with these appliances.

1 Reply Award Share ···

shadow_ivy13 · 5mo ago

This just happened to me. It wasn't in use though, it just shattered during the night. Looking for a replacement glass, I saw people are trying to file a lawsuit.

1 Reply Award Share ···

Spikedjft · 3mo ago

Mine just shattered tonight while not in use. Seeing this all over the internet as well. They need to compensate us for this. My oven isn't even 2 years old yet

1 Reply Award Share ···

ThisMidnight497 · 3mo ago

Mine just exploded too. I'm so upset because the customer service was awful and their language barrier didn't help.

1 Reply Award Share ···

Lost-Steak-8759 · 1mo ago

Mines just did this today it scared me and my child crazy

1 Reply Award Share ···

[8] *Outer glass on Frigidaire oven shattered, can we cover the front and still use it while we wait on a repair?*, reddit.com (Nov. 24, 2023, 11:38 AM), https://www.reddit.com/r/Appliances/comments/17zvcyh/outer_glass_on_frigidaire_oven_shattered_can_we/; United States Consumer Product Safety Commission, Incident Report Details, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5109399 (last visited February 16, 2026).

**Incident Details**

**Incident Description:** On December 21, 2024, the Frigidaire stove I purchased from Best Buy in September 2023, which was delivered in October 2023 due to delays, experienced a spontaneous explosion of the oven door glass while the oven was off. I immediately contacted Frigidaire, but the representative stated the issue was outside of warranty and that there was nothing they could do. During my lengthy hold time, I discovered that over 900 consumers have reported the same issue to the Consumer Bureau, and there is currently a class action lawsuit regarding this defect. I emphasized to the representative that this is a serious manufacturing defect, as the exploding glass caused injury to my legs and feet. Despite this, the representative seemed unconcerned. When I requested to speak with a supervisor to address the matter, the call was abruptly disconnected. On my second call to Frigidaire on December 21, 2024, after another extended wait, I requested a supervisor again. The representative assured me that a supervisor would call me back, but as of today, January 16, 2025, I have not received any follow-up. I contacted Frigidaire a third time on December 30, 2024. The representative offered a 10% discount on a new stove or suggested a technician could come to repair the stove, with me being responsible for both the backordered part and the repair costs. I reiterated that I would prefer Frigidaire to recall the stove and investigate the root cause of this defect, especially given the significant number of complaints from over 909 consumers. As a Total Tech member, I also called Best Buy on December 31, 2024 (case# [REDACTED]) , to report the issue. The representative assured me that Best Buy would contact Frigidaire to investigate the problem and follow up with me. However, I received no follow-up. On January 8, 2025, I called Best Buy again (case# [REDACTED]) and spoke with Representative [REDACTED]. He informed me that the notes on my case indicated I should follow up with the manufacturer. I explained that both Best Buy and Frigidaire had been unhelpful, and I expressed concern over the continued sale of this stove given the consumer complaints and ongoing class action lawsuit. I urged Best Buy and Frigidaire to address the issue before someone is seriously injured. During this call, [REDACTED] arranged for a supervisor, [REDACTED], to contact me. [REDACTED] advised me to email [REDACTED] for further assistance.

**Incident Date:** 12/21/2024

**Incident Location:** Home/Apartment/Condominium

80. As some of the above complaints show, consumers have been vocal in complaining directly to Defendant about the Defect, and the number and consistency of their complaints should have alerted Defendant to the existence of the Defect. In light of the inaction from Defendant, some consumers who experienced the Defect went so far as to appear on the local news "to make sure other families know that this could happen."[9]

81. In the absence of a nationwide recall, consumers report varying degrees of reactions from Defendant: "'I called Frigidaire to report the incident and ask why there has not been a

[9] Lisa Sylvester, *Local family warns of potential danger after glass oven door spontaneously explodes*, WPXI News (Jul. 10, 2023), https://www.wpxi.com/news/local/local-family-warns-potential-danger-after-glass-oven-door-spontaneously-explodes/NSHYYL22HZEWJOVMQR4J6SBNJY/ 5109399 (last visited February 16, 2026).

recall when I have read multiple reports of their oven glass exploding and they could not give me an answer,' Kayla told us, 'Their only suggestion was that they would send out a tech, which would cost me $100, and the tech could tell me how much it would cost to repair.'"[10]

82. Forums, message boards, and review pages on distributors' websites are also replete with complaints about the Defect, demonstrating that the Plaintiffs' experiences are not an isolated event. Some examples of the many complaints about the Defect are below[11]:

[10] Mark Huffman, *Complaints mount about Frigidaire oven doors*, ConsumerAffairs (Jul. 3, 2024), https://www.consumeraffairs.com/news/complaints-mount-about-frigidaire-oven-doors-070324.html (last visited February 16, 2026).

[11] *Outer glass on Frigidaire oven shattered, can we cover the front and still use it while we wait on a repair?*, reddit.com (Nov. 24, 2023, 11:38 AM), https://www.reddit.com/r/Appliances/comments/17zvcyh/outer_glass_on_frigidaire_oven_shattered_can_we/ (last viewed February 16, 2026).

**shadow_ivy13** · 5mo ago

Mine exploded last night, we bought it around November 2020. I haven't used the oven in maybe a week? No damage to the outside before this, so we're very confused as to why it shattered.

1 Reply Award Share ···

**TimeNat** · 3mo ago

our oven door just exploded like 30 mins ago, same looking model, ours is about 6 years old

1 Reply Award Share ···

**joeshiesty704** · 3mo ago

Mine just did the same thing, literally. Came downstairs to let my dog out and just hear a shattering sound

1 Reply Award Share ···

**ultimatecatlady94** · 3mo ago

Ours just exploded tonight while my toddler was sitting nearby. It's had been off for 4 hours. We weren't even touching it.

1 Reply Award Share ···

**Extension-Candle-620** · 2mo ago

My outer glass on door just shattered inner glass fine can I use? Eveything closed today

1 Reply Award Share ···

83. Additional complaints discussed the range of circumstances under which consumers are experiencing the Defect[12]:

[12] https://www.reddit.com/r/Appliances/comments/17e66v1/oven_door_shattered/ (last visited February 16, 2026).

## Oven door shattered



So I pan seared a steak and finished it in the oven at 400ºf

Step away to change music on my laptop and the glass door just shattered while I was changing music

**croc373** · 2y ago

This happened to my 14 year old Frigidaire oven a few weeks ago, except mine wasn't even on. What a disaster. They wanted to give me a discount on a new door but I would never just replace a door after this. It sucks big time, I'm sorry. Don't be surprised if you find glass pieces around the room for a few days even after sweeping it all up. They are so small and go everywhere.

1 Reply Award Share ···

84. There are currently more than 564 complaints filed with the SaferProducts.gov site discussing their experiences with the manifestation of the Defect. The range of incident dates is striking, with complaints filed as early as 2011 and complaints continuing through as recently as

May 2025[13]:

**Incident Details**

**Incident Description:** Our Figidiare oven's Inner glass door Shattered, model # FEF368GSD, S/N VP94258067. The resulting glass fragments caused a severe safety hazard - the oven was in normal use and the glass had no previous damage.

**Incident Date:** 7/17/2012

**Incident Location:** Home/Apartment/Condominium

**Incident Details**

**Incident Description:** At 6:04 am I was awoken by my oven outer glass door exploding. Oven has not been used for 9 days.

**Incident Date:** 5/29/2025

**Incident Location:** Home/Apartment/Condominium

85. Some consumers reported suffering injuries as a result of the Defect manifesting[14]:

**Incident Details**

**Incident Description:** (11/03/2024) The consumer stated that the oven was pre-heating for about 10 minutes when the outer glass of the oven store exploded. The consumer was standing in front of the stove when it exploded. Shards of glass went into her stomach and her hands. No medical attention was required immediately. The consumer stated that there is a piece of glass in her right hand. If she can't get it out, she will have to seek medical attention.

**Incident Date:** 11/3/2024

**Incident Location:** Home/Apartment/Condominium

86. Additional complaints from saferproducts.gov are included below[15]:

---

[13] United States Consumer Product Safety Commission, Incident Report Details, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1261197; https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5312101 (last visited February 16, 2026).

[14] United States Consumer Product Safety Commission, Incident Report Details, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4979566 (last visited February 16, 2026).

[15] United States Consumer Product Safety Commission, Incident Report Details, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5310471; https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5299477; https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5269455; https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5160636; https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5126018 (last visited February 16, 2026).

### Incident Details

**Incident Description:** The front glass on my Frigidaire oven exploded and shattered all over my kitchen. No one was injured by the exploding glass, as no one was in the kitchen at the time. The oven was set to preheat and had not yet reached 350 degrees. Had someone been in the kitchen at the time, there could have been injuries to the person's legs. I had been standing in front of the oven just 2 minutes before, had I not stepped away, the glass would have impacted me. A small child, like my 6 year old, could have been more severely injured had she been in there at the time.

**Incident Date:** 5/24/2025

**Incident Location:** Home/Apartment/Condominium

### Incident Details

**Incident Description:** My Frigidaire oven's exterior door glass exploded without reason. I was standing in front of it at the time but fortunately only hads a few knicks from the glass. The oven was purchased from Lowe's Home Improvement December 2019. Upon contacting Frigidaire, I was told my oven was not under warranty. According to a [REDACTED] search there have been 900 reports since 2018 to [REDACTED] and Frigidaire is aware of the problem yet they have not warned customers that this could happen nor have they issued a recall. Frigidaire offered to send a repair tech to assess the situation to which I would have to pay for the service and the glass plus repair cost. After a heated discussion with an associate and then a supervisor via 60 minute a phone call , I am told a replacement glass will be delivered and will be replaced at no charge.

**Incident Date:** 5/10/2025

**Incident Location:** Home/Apartment/Condominium

### Incident Details

**Incident Description:** The glass oven door exploded out of nowhere on a Frigidaire oven. I was sitting in the living room playing my game and heard a boom and glass shattering. The oven has not been used in days.

**Incident Date:** 5/3/2025

**Incident Location:** Home/Apartment/Condominium

### Incident Details

**Incident Description:** My Frigidaire Gallery oven glass door shattered when my oven was not in use. I found glass on my kitchen floor. It had to have shattered during the night. I am still cleaning up glass three days later. UPDATED ON 3/5/2025: [The product was brand new and the consumer was the original owner.]

**Incident Date:** 2/28/2025

**Incident Location:** Unspecified

**Incident Details**

**Incident Description:** Reporting due to the spontaneity of the event. My wife pre-heating our Frigidaire stove. Walked away for a second and the glass exploded all over the kitchen. Luckily no injuries as she walked away, but usually once she starts pre heating she turns around to start prepping vegetables. If this had been the case she would have been blasted by the glass

**Incident Date:** 2/3/2025

**Incident Location:** Home/Apartment/Condominium

87. Defendant tracks and monitors forums, message boards, and review pages on distributors' websites and was aware of the Defect in the Frigidaire ranges. Defendant does so purportedly to further its customer service and quality control efforts. In regularly scanning online consumer complaints, Defendant became aware of the Defect and its failure to solve the problem identified in the above posts.

88. In sum, as early as 2020, and likely earlier, Defendant was aware of the Defect, should have been aware of the Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the Defect, based on the following sources among others:

a. Knowledge gained through Defendant's extensive pre-sale testing regimen;

b. Detailed data gathered by Defendant about the large number of warranty claims relating to the Defect;

c. Numerous and consistent consumer complaints made directly to Defendant about the Defect;

d. Numerous and consistent consumer complaints made on online forums, message boards, and distributor websites; and

e. Defendant service center employees' familiarity with, and knowledge of, the Defect.

89. Moreover, the number and consistency of Class member complaints describing the

Defect's risks and negative consequences, such as the inability to use the oven of the Frigidaire range for its intended purposes, underscores the fact that Class members considered the Defect to be a material issue to the reasonable consumer.

## TOLLING OF STATUTES OF LIMITATIONS

90. Defendant had exclusive knowledge of the defective nature of the Frigidaire ranges and knew the Defect would not be discovered by Plaintiffs and Class members unless and until the Defect manifested. Only Defendant had pre-sale access to information about the Defect, through its pre-release testing, communications with owners through its customer service representatives, warranty claims, repair and replacement part orders, and other sources of internal information. Additionally, the Defect is not apparent from inspection of the Frigidaire ranges during installation or after installation and use begins.

91. Since the Defect cannot be detected until it manifests itself, Plaintiffs and Class members exercising due diligence were not reasonably able to discover the Defect until after the Defect manifested. Plaintiffs and Class members could not reasonably have been expected to learn of or discover Defendant's omissions of material information concerning the Frigidaire ranges until after manifestation of the Defect and only then because they would be forced to research what had happened to their ranges. Therefore, the discovery rule applies to all claims asserted by Plaintiffs and Class members.

92. Defendant has known about the Defect since at least 2011, if not earlier, and has failed to alert Class members to the Defect. To the contrary, upon information and belief, Defendant continued making representations regarding the quality and reliability of Frigidaire ranges.

93. Thus, any applicable statute of limitations has been tolled by Defendant's actions and Defendant is estopped from pleading the statute of limitations because it failed to disclose facts it was obligated to disclose concerning the Defect.

## CLASS ACTION ALLEGATIONS

94. Plaintiffs seek relief in their individual capacity and seek to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of the following class:

> **Nationwide Class**
> All persons or entities in the United States and its territories who purchased a Frigidaire range.
>
> **Connecticut Class**
> All persons or entities in the State of Connecticut who purchased a Frigidaire range.
>
> **Illinois Class**
> All persons or entities in the State of Illinois who purchased a Frigidaire range.
>
> **North Carolina Class**
> All persons or entities in the State of North Carolina who purchased a Frigidaire range.
>
> **South Carolina Class**
> All persons or entities in the State of South Carolina who purchased a Frigidaire range.
>
> **Virginia**
> All persons or entities in the State of Virginia who purchased a Frigidaire range.
>
> **Wisconsin**
> All persons or entities in the State of Wisconsin who purchased a Frigidaire range.

95. The nationwide class and the state classes ("State Classes") are collectively referred to herein as the "Class" or "Classes" and their members as "Class members." Excluded from the

Classes are the Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, as well as the presiding judges in this action and the judges' immediate family, and the clerks of said judges.

96. Plaintiffs reserve the right to amend or modify these class definitions after they have had an opportunity to conduct discovery.

97. Numerosity. Fed. R. Civ. P. 23(a)(1). The Classes are so numerous that joinder of all members is unfeasible and impracticable. While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believe that many thousands of consumers have purchased the affected Frigidaire ranges.

98. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members. These common questions of law and fact include for the class, without limitation:

a. Whether Frigidaire ranges contain the alleged latent Defect;

b. Whether Defendant knew or should have known of the Defect before it sold the defective ranges;

c. Whether Defendant failed to disclose the Defect to Class members;

d. Whether the facts not disclosed by Defendant regarding the Defect were material;

e. Whether Defendant has a pattern and practice of denying Plaintiffs' and Class members' claims as out of warranty, instead of acknowledging the alleged Defect;

f. Whether Defendant breached express and/or implied warranties with Plaintiffs and Class members;

g. Whether Defendant should be financially responsible for notifying Plaintiffs and Class members of the Defect; and

h. Whether Defendant should be required to reimburse Plaintiffs and Class members who paid to repair or replace their ranges as a result of the Defect.

99. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

100. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs' counsel are competent and experienced in litigating class actions.

101. Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

## COUNT I
## BREACH OF EXPRESS WARRANTY
## (On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, on behalf of the State Classes)

102. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

103. Defendant represented that the Frigidaire ranges were durable and reliable, among other representations and warranties alleged herein. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase the ranges.

104. Defendant provides an express warranty against any defects in materials and workmanship in the Frigidaire ranges. Defendant also represented that defects in materials and workmanship in the ranges that occurred during the initial warranty period would be replaced or repaired at no cost to the consumer. However, the time limits contained in the written warranty were unconscionable and grossly inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining those time limitations; the terms of the warranty unreasonably favored Defendant over Plaintiffs and Class members; a gross disparity in bargaining power existed as between Defendant and Class members; and Defendant knew or should have known that the Frigidaire ranges were defective at the time of sale and would manifest the Defect likely after the warranty time limitations had elapsed, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

105. Defendant knew or should have known at the time of sale that Frigidaire ranges were defective and would shatter or explode solely as a result of a defect in design, materials, and workmanship, namely, the Defect. Plaintiffs and Class members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing Frigidaire ranges. For this reason, the terms of the limited warranty unreasonably favored Defendant over Plaintiffs and Class members. Plaintiffs' and Class members' acceptances of the warranty's time limitation, to the extent they are found to apply so as to exclude instances where the Defect manifested itself outside of that limitation, was neither knowing nor voluntary, thereby rendering the limitation unconscionable and ineffective.

106. Defendant breached its express warranty by knowingly selling to consumers the defective Frigidaire ranges without informing consumers of the Defect.

107. Defendant further breached its express warranty by failing to remedy the Defect and repair damage caused by the Defect, without charge to the consumers, even though the Defect was present during the express warranty period, regardless of when the Defect ultimately manifested.

108. As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered economic damages including, but not limited to, repair and/or replacement costs, and other damages.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, on Behalf of the State Classes)

109. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

110. Plaintiffs and Class members purchased the Frigidaire ranges from Defendant by and through Defendant's authorized agents or were otherwise expected to be the eventual purchasers of the Frigidaire ranges when purchased from third parties.

111. Plaintiffs, like other Class members used the Frigidaire ranges as intended or reasonably expected by Electrolux by utilizing the features offered by the ranges.

112. At all relevant times, Defendant was the manufacturer, distributor, warrantor, seller, and merchant with respect to the Frigidaire ranges.

113. At the time of purchase, Defendant provided an implied warranty to Plaintiffs and Class members that the Frigidaire ranges and their components were merchantable and fit for the ordinary purposes for which they were sold. Alternatively, Defendant's descriptions of the Frigidaire ranges became part of the basis of the bargains between consumers and Defendant,

creating implied warranties that the product purchased by Plaintiffs and Class members would conform to Defendant's representations.

114. The Frigidaire ranges purchased by Plaintiffs and Class members did not conform to Defendant's representations.

115. At the time of purchase, the Frigidaire ranges were defective, unsafe, and not fit for the ordinary purpose of providing reasonably reliable and safe operation for a reasonably expected length of time. Under normal circumstances, a properly designed and manufactured oven window should not shatter or explode without misuse or other foreseeable cause. Defendant cannot disclaim this implied warranty as it knowingly sold a defective product.

116. Defendant's Frigidaire ranges with the Defect, given the concerns raised by the Defect, do not meet the minimum standard of quality required for merchantability. The Frigidaire ranges are not materially free of defects and contain a latent Defect that, when it manifests, creates an unsafe environment for consumers and prevents safe use of the Frigidaire ranges for the purpose they are sold. As such, the Frigidaire ranges are not safe, reliable, or substantially free from defects, and are thus unmerchantable.

117. Defendant knew or should have known the Defect existed in the Frigidaire ranges at the time of manufacture and that the oven doors of the Frigidaire ranges have an unusual propensity to shatter or explode. Plaintiffs and Class members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Frigidaire ranges. Defendant sold to Plaintiffs and Class members the defective Frigidaire ranges without alerting them to the Defect. After sale, Defendant continued to fail to notify Plaintiffs and Class members of the Defect.

118. Defendant knew or should have known that a reasonable consumer exercising due diligence, including Plaintiffs and Class members, could not have discovered the Defect unless and until the Defect manifested itself.

119. The Defect manifests in the absence of any abnormal use or reasonable secondary causes.

120. Defendant failed to adequately remedy the Defect and repair damage caused by the Defect.

121. Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Defendant was and is in actual or constructive privity with Plaintiffs and Class members.

a. Plaintiffs and the other Class members had sufficient direct dealings with Defendant and/or representatives and agents, including its authorized distributors and franchisees, to establish any required privity of contract. Defendant's authorized distributors, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Frigidaire ranges and have no rights under the warranty agreements provided with the Frigidaire ranges. The warranty agreements were designed for and intended to benefit only the ultimate purchasers of the Frigidaire ranges, i.e., Plaintiffs and the Class members.

b. Privity is not required to assert this claim because Plaintiffs and the Class members are intended third-party beneficiaries of contracts between Defendant and its distributors, franchisees, representatives, and agents.

c. By extending express written warranties and marketing to end-user purchasers, Defendant brought itself into privity with Plaintiffs and Class members.

d. Privity is not required because Plaintiffs' and the other Class members' Frigidaire ranges are inherently dangerous due to the Defect and nonconformities, namely that the Defect jeopardizes safe living conditions and risks damage to property.

122. As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered economic damages including, but not limited to, repair and/or replacement costs, loss of use, loss in value, and other damages.

## COUNT III
## FRAUDULENT OMISSION
**(On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, on Behalf of the State Classes)**

123. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

124. Defendant knew the Frigidaire ranges were defective, had an unusual propensity to shatter or explode, were not suitable for their intended use, and created an unsafe environment for consumers.

125. Defendant concealed from and failed to disclose to Plaintiffs and Class members the defective nature of the Frigidaire ranges.

126. Defendant was under a duty to Plaintiffs and Class members to disclose the defective nature of Frigidaire ranges because:

a. Defendant was in a superior position to know the true state of facts about the Defect contained in Frigidaire ranges;

b. Defendant made partial disclosures about the quality of Frigidaire ranges without revealing their defective nature; and

c. Defendant fraudulently concealed or omitted disclosure of the defective nature of the Frigidaire ranges from Plaintiffs and other Class members.

127. Defendant also had a duty to disclose the Defect because it causes unhealthy living conditions for Plaintiffs and Class members by exposing them to risks of personal injury and property damage.

128. Defendant's duty to disclose also arises from the fact that the Defect goes to and impacts the core functionality or a core function of the outer glass of the Frigidaire ranges' oven: to insulate the heat inside the oven in a safe and reliable manner.

129. The facts Defendant concealed from or did not disclose to Plaintiffs and the other Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Defendant's Frigidaire-branded ranges or whether to pay a lesser price for them. Had Plaintiffs and Class members known about the defective nature of the Frigidaire ranges, they would not have purchased Frigidaire ranges or would have paid less for them.

130. Defendant concealed or failed to disclose the true nature of the Defect contained in Frigidaire ranges in order to induce Plaintiffs and Class members to act thereon. Plaintiffs and Class members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiffs' and Class members' purchase of the defective Frigidaire range.

131. Defendant continued to conceal the defective nature of the Frigidaire ranges even after Class members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today. As a direct and proximate result of Defendant's misconduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

## COUNT IV
## UNJUST ENRICHMENT
## (On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, on Behalf of the State Classes)

132. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

133. Plaintiffs bring this cause of action individually and on behalf of the Class.

134. Defendant has long known that during normal and expected conditions, Frigidaire ranges have an unusual propensity to shatter or explode without any misuse or forewarning. The Defect was known to Defendant prior to introducing the Frigidaire ranges into the marketplace as a result of pre-sale testing.

135. As a result of its fraudulent acts and omissions related to the defective Frigidaire ranges, Defendant obtained monies which rightfully belong to Plaintiffs and the Class members, to the detriment of Plaintiffs and the Class members.

136. Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the Class members who, without knowledge of the Defect, paid a higher price for their Frigidaire ranges, which actually had lower values. Defendant also received monies (including repair and replacement costs) for Frigidaire ranges that Plaintiffs and the Class members would not have otherwise purchased.

137. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

138. Defendant’s retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

139. Plaintiffs and the Class members are entitled to restitution of the profits unjustly obtained plus interest.

## COUNT V

**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA")**
**(On Behalf of Plaintiff Forte and the Connecticut Class)**

140. Plaintiff Forte, individually and for the Connecticut Class, hereby realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

141. Plaintiff Forte brings this claim on behalf of himself and the Connecticut Class.

142. The Connecticut Unfair Trade Practices Act ("CUPTA") provides: "No person shall engage in unfair methods of competition and unfair . . . acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

143. Plaintiff Forte and each Connecticut Class member is a "person" as defined by Conn. Gen. Stat. § 42-110a(3) and is a consumer of Defendant's goods and thus qualifies as a "person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b" under Conn. Gen. Stat. § 42-110g.

144. Defendant is a "person" as defined by Conn. Gen. Stat. § 42-110a(3).

145. Defendant advertised, offered, or sold goods or services in Connecticut and therefore engaged in trade or commerce directly or indirectly affecting the people of Connecticut. Conn. Gen. Stat. § 42-110a(4).

146. Electrolux's unfair and deceptive acts or practices occurred repeatedly in Electrolux's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

147. Electrolux knew that the glass oven doors on Frigidaire ranges were prone to shattering or exploding but concealed that information.

148. Defendant participated in misleading, false, or deceptive practices that violated the

CUPTA, by failing to disclose and actively concealing that the Frigidaire ranges contained the Defect, by marketing the Frigidaire ranges as safe and of high quality, and by presenting itself as a reputable manufacturer that values safety and stands behind ranges after they are sold. Defendant, therefore, engaged in deceptive business practices prohibited by the CUPTA.

149. In the course of Electrolux's business, it willfully failed to disclose and actively concealed the Defect discussed above.

150. Electrolux's acts and practices, described herein, are unfair and in violation of Connecticut law because they violate Connecticut public policy and warranty laws requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

151. Electrolux advertised, marketed, and sold the Frigidaire ranges as set forth above. Thus, Electrolux wrongfully:

a. Knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true value of the Frigidaire ranges;

b. Engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Frigidaire ranges;

c. Advertised the Frigidaire ranges with intent not to sell them as advertised; and

d. Failed to make repairs or made repairs and provided replacements that caused Plaintiff Forte and Class members to experience repeated instances of failure, rendering the warranty useless.

152. Electrolux had a duty to Plaintiff Forte and Connecticut Class members to disclose the Defect because it was in the superior position to know about the defect in the Frigidaire ranges.

153. As a result of Electrolux's conduct, Plaintiff Forte and Connecticut Class members were harmed and suffered damages in that the Frigidaire ranges experienced and may continue to experience the Defect.

154. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff Forte and the Connecticut Class members have suffered actual damages, in the amount of the cost to repair the Defect, to replace oven doors, and other incidental and consequential damages recoverable under the law. Furthermore, Plaintiff Forte and the Connecticut Class members would not have purchased the Frigidaire range or would not have paid as much for it.

155. Plaintiff Forte and Connecticut Class members are entitled to equitable relief, damages, including treble damages and damages to account for the diminished value of their Frigidaire ranges, attorneys' fees and costs, and any other relief provided by law.

**COUNT VI**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 Ill. Comp. Stat. 505/1, *et seq.* ("ICFA")**
**(On Behalf of Plaintiff Halim and the Illinois Class)**

156. Plaintiff Halim, individually and for the Illinois Class, hereby realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

157. Plaintiff Halim brings this claim on behalf of himself and the Illinois Class.

158. The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person

has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2. Defendant engaged in unfair and deceptive practices that violated the ICFA as described above.

159. Defendant is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

160. Plaintiff Halim and the Illinois Class members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

161. Defendant participated in misleading, false, or deceptive practices that violated the ICFA. By failing to disclose and actively concealing that the Frigidaire ranges contained the Defect, by marketing the Frigidaire ranges as safe and of high quality, and by presenting itself as a reputable manufacturer that values safety and stands behind ranges after they are sold, Defendant engaged in deceptive business practices prohibited by the ICFA.

162. In the course of its business, Defendant willfully failed to disclose and actively concealed the Defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Frigidaire ranges.

163. Defendant has known, or should have known for years, about the Defect in the Frigidaire ranges, but failed to disclose that the Frigidaire ranges contained the Defect. Defendant also knew they were manufacturing, selling, and distributing Frigidaire ranges that did not perform as advertised and jeopardized the safety of the household occupants but failed to disclose this information to Plaintiff Halim and members of the Illinois Class. Defendant failed to disclose information about the propensity of the Defect to cause the outer glass on the oven door to shatter or explode. Further, Defendant knew, or should have known, that such an explosion of the glass

could cause household occupants to be at risk of injury. Defendant deliberately concealed and failed to disclose this material information to ensure that consumers would purchase the Frigidaire ranges and pay more for the ranges than they were worth given the Defect.

164. Defendant committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Frigidaire ranges' Defect and corresponding safety risk in connection with the sale and/or advertisement of Frigidaire ranges.

165. Defendant fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Halim and members of the Illinois Class the characteristics of Frigidaire ranges with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.

166. Defendant intended that Plaintiff Halim and members of the Illinois Class would, in the course of their decision to expend money in purchasing and/or repairing Frigidaire ranges, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of Frigidaire ranges with respect to materials, workmanship, design, manufacture and information in the manuals.

167. Information regarding the Defect as described in this Complaint is material to consumers in that the defect results in exorbitant repair or replacement costs and poses a safety risk.

168. If Defendant had not concealed the defect from Plaintiff Halim and members of the Illinois Class within the express warranty period, the Defect would have been repaired without cost to purchasers as promised under the original warranty.

169. Defendant violated the ICFA by failing to inform consumers prior to purchase

and/or during the warranty period that Frigidaire ranges were defectively designed and/or manufactured.

170. Defendant violated the ICFA by failing to inform consumers prior to purchase and/or during the warranty period that Frigidaire ranges contained defects and would require repair or replacement of expensive parts after shattering of the glass door.

171. As a proximate and direct result of Defendant's unfair and deceptive trade practices, Plaintiff Halim and members of the Illinois Class purchased Frigidaire ranges and suffered an ascertainable loss and financial harm.

172. Plaintiff Halim and members of the Illinois Class experienced ascertainable losses in the form of actual damages in the amount of the cost to repair the Defect, to replace oven doors, and other incidental and consequential damages recoverable under the law. Furthermore, Plaintiff Halim and the Illinois Class members would not have purchased the Frigidaire range, or would not have paid as much for it.

173. The conduct of Defendant offends public policy as established by statutes and common law, is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to Illinois Class members (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

174. Pursuant to statute, Plaintiff Halim provided notice to Defendant of his claims by letter dated February 11, 2026.

175. Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff Halim and members of the Illinois Class seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

176. Plaintiff Halim and members of the Illinois Class also seek an order enjoining

Defendant's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under the 815 Ill. Comp. Stat. 505/1, *et seq*.

**COUNT VII**
**VIOLATION OF THE NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**N.C. Gen. Stat. Ann. §§ 75-1.1 *et seq*.**
**(On Behalf of Plaintiff Houser and the North Carolina Class)**

177. Plaintiff Houser, individually and for the North Carolina Class, hereby realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

178. Plaintiff Houser brings this claim on behalf of himself and on behalf of the members of the North Carolina Class.

179. Defendant advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

180. Defendant engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1.

181. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

182. Defendant intended to mislead Plaintiff Houser and the North Carolina Class members and induce them to rely on its misrepresentations and omissions.

183. Had Defendant disclosed to Plaintiff Houser and the North Carolina Class members that it misrepresented the quality of the Frigidaire ranges, omitted material information regarding the Defect, and was otherwise engaged in deceptive, common business practices, Defendant would have been unable to continue in business, and it would have been forced to disclose its actual intentions. Instead, Defendant represented that the Frigidaire ranges were safe to operate. Plaintiff Houser and the North Carolina Class members acted reasonably in relying on Defendant's

misrepresentations and omissions, the truth of which they could not have discovered.

184. Defendant acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff Houser and the North Carolina Class members' rights. Defendant's knowledge of the Defect put it on notice that the Frigidaire ranges were not as it advertised.

185. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff Houser and the North Carolina Class members have suffered actual damages in the amount of the cost to repair the Defect, to replace oven doors, and other incidental and consequential damages recoverable under the law. Furthermore, Plaintiff Houser and the North Carolina Class members would not have purchased the Frigidaire range or would not have paid as much for it.

186. Plaintiff Houser and the North Carolina Class members seek all monetary and nonmonetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## COUNT VIII
## VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES
## S.C. Code §§ 39-5-10, *et seq*.
## (On Behalf of Plaintiff McConnell and the South Carolina Class)

187. Plaintiff McConnell, individually and for the South Carolina Class, hereby realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

188. Plaintiff McConnell brings this claim on behalf of herself and on behalf of the members of the South Carolina Class.

189. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. S.C. Code § 39-5-10(a).

190. Defendant is a "person" as defined by S.C. Code § 39-5-10(a), which includes corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity.

191. Defendant is engaged in "trade" or "commerce" as defined by S.C. Code § 39-5-10(b), which includes the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of South Carolina.

192. The South Carolina UTPA is guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)).

193. Pursuant to 15 U.S.C. § 45(n), an act or practice is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

194. Electrolux's unfair and deceptive acts or practices occurred repeatedly in Electrolux's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

195. Electrolux knew that the glass oven doors on Frigidaire ranges were prone to shattering or exploding but concealed that information.

196. In the course of Electrolux's business, it willfully failed to disclose and actively concealed the Defect discussed above.

197. Electrolux's acts and practices, described herein, are unfair and in violation of

South Carolina law because they violate South Carolina public policy and warranty laws requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

198. Electrolux advertised, marketed, and sold the Frigidaire ranges as set forth above. Thus, Electrolux wrongfully:

a. Knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true value of the Frigidaire ranges;
b. Engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Frigidaire ranges;
c. Advertised the Frigidaire ranges with intent not to sell them as advertised; and
d. Failed to make repairs or made repairs and provided replacements that caused Plaintiff McConnell and South Carolina Class members to experience repeated instances of failure, rendering the warranty useless.

199. Plaintiff McConnell and South Carolina Class members could not have reasonably avoided Defendant's practices as described herein because Defendant concealed its practices.

200. Electrolux had a duty to Plaintiff McConnell and South Carolina Class members to disclose the Defect because it was in the superior position to know about the defect in the Frigidaire ranges.

201. As a result of Electrolux's conduct Plaintiff McConnell and South Carolina Class members were harmed and suffered damages in that the Frigidaire ranges experienced and may continue to experience the Defect.

202. In violating Plaintiff McConnell and South Carolina Class members' rights under

the South Carolina UTPA as described herein, Defendant acted intentionally, knowingly, and/or with reckless disregard of the rights of Plaintiff McConnell and South Carolina Class members.

203. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff McConnell and the South Carolina Class members have suffered actual damages in the amount of the cost to repair the Defect, to replace oven doors, and other incidental and consequential damages recoverable under the law. Furthermore, Plaintiff McConnell and the South Carolina Class members would not have purchased the Frigidaire range or would not have paid as much for it.

204. Plaintiff McConnell and the South Carolina Class members seek all monetary and nonmonetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## COUNT IX
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
## Va. Code §§ 59.1-196, *et seq.*
## (On Behalf of Plaintiffs Annelli and Barrett and the Virginia Class)

205. Plaintiffs Annelli and Barrett, individually and for the Virginia Class, hereby reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

206. Plaintiffs Annelli and Barrett bring this claim on behalf of themselves and on behalf of the members of the Virginia Class.

207. Defendant, Plaintiffs Annelli and Barrett, and the Virginia Class members are "persons" within the meaning of Va. Code Ann. § 59.1-198.

208. Defendant is and was a "supplier" within the meaning of Va. Code Ann. § 59.1-198.

209. The Frigidaire ranges with the Defect are "goods" within the meaning of Va. Code Ann. § 59.1-198.

210. Defendant was engaged, and continues to engage, in "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

211. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A).

212. In the course of its business, the Defendant, through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Frigidaire ranges, as detailed above.

213. Specifically, by misrepresenting the Frigidaire ranges and/or the outer glass panel of the oven door installed in them as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by Frigidaire ranges and/or the Defect, Defendant engaged in one or more of the following unfair or deceptive business practices prohibited by Va. Code Ann. § 59.1-200:

a. Knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true value of the Frigidaire ranges;

b. Engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Frigidaire ranges;

c. Advertised the Frigidaire ranges with intent not to sell them as advertised; and

d. Failed to make repairs or made repairs and provided replacements that caused Plaintiffs Annelli and Barrett and Virginia Class members to experience repeated instances of failure, rendering the warranty useless.

214. Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs Annelli and Barrett and Virginia Class members, about the true safety and reliability of Frigidaire ranges and/or the Defect, the quality of Frigidaire ranges, and the true value of the Frigidaire ranges.

215. Defendant's scheme and concealment of the Defect and true characteristics of the outer glass panel of the oven door in Frigidaire ranges were material to Plaintiffs Annelli and Barrett and Virginia Class members, as Defendant intended. Had they known the truth, Plaintiffs Annelli and Barrett and Virginia Class members would not have purchased Frigidaire ranges or would have paid significantly less for them.

216. Plaintiffs Annelli and Barrett and Virginia Class members had no way of discerning that the Defendant's representations were false and misleading and/or otherwise learning the facts that the Defendant has concealed or failed to disclose. Plaintiffs Annelli and Barrett and Virginia Class members did not, and could not, unravel the Defendant's deception on their own.

217. Defendant had an ongoing duty to Plaintiffs Annelli and Barrett and Virginia Class members to refrain from unfair and deceptive practices under the Virginia CPA in the course of its business. Specifically, Defendant owed Plaintiffs Annelli and Barrett and Virginia Class members a duty to disclose all the material facts concerning the Defect in the Frigidaire ranges because it possessed exclusive knowledge, it intentionally concealed the Defect from Plaintiffs Annelli and Barrett and Virginia Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

218. As a direct and proximate result of Defendant's unfair and deceptive acts and

practices, Plaintiffs Annelli and Barrett and Virginia Class members have suffered actual damages in the amount of the cost to repair the Defect, to replace oven doors, and other incidental and consequential damages recoverable under the law. Furthermore, Plaintiffs Annelli and Barrett and Virginia Class members would not have purchased the Frigidaire range or would not have paid as much for it.

219. Defendant's violations present a continuing risk to Plaintiffs Annelli and Barrett and Virginia Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

220. Pursuant to Va. Code Ann. § 59.1-204(A)–(B), Plaintiffs Annelli and Barrett and Virginia Class members seek an order enjoining the Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Virginia CPA.

## COUNT X
## VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
## Wis. Stat. § 100.18, *et seq.*
## (On Behalf of Plaintiff Sleger and the Wisconsin Class)

221. Plaintiff Sleger, individually and for the Wisconsin Class, hereby realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

222. Plaintiff Sleger brings this claim on behalf of herself and on behalf of the members of the Wisconsin Class.

223. Defendant is a "person, firm, corporation, or association" within the meaning of Wis. Stat. § 100.18(1).

224. Plaintiff Sleger and Wisconsin Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

225. Frigidaire ranges with the Defect are "merchandise" within the meaning of Wis.

Stat. § 100.18(1).

226. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

227. In the course of their business, Defendant, through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Frigidaire range, as detailed above.

228. Specifically, by misrepresenting the Frigidaire ranges and/or the outer glass panel of the door as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by Frigidaire ranges with the Defect, Defendant violated the DTPA by making assertions, representations and statements of fact which are untrue, deceptive or misleading, as prohibited by Wis. Stat. § 100.18(1).

229. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Sleger and Wisconsin Class members, about the true safety, reliability, quality, and true value of the Frigidaire ranges with the Defect.

230. Defendant's misrepresentations and concealment of the Defect were material to Plaintiff Sleger and Wisconsin Class members, as Defendant intended. Had they known the truth, Plaintiff Sleger and Wisconsin Class members would not have purchased Frigidaire ranges or would have paid significantly less for their Frigidaire range.

231. Plaintiff Sleger and Wisconsin Class members had no way of discerning that

Defendant's representations were false and misleading, or otherwise learning the facts that the Defendant had concealed or failed to disclose. Plaintiff Sleger and Wisconsin Class members did not, and could not, unravel Defendant's deception on their own.

232. Defendant had an ongoing duty to Plaintiff Sleger and Wisconsin Class members to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendant owed Plaintiff Sleger and Wisconsin Class members a duty to disclose all the material facts concerning the Defect because it possessed exclusive knowledge, it intentionally concealed the Defect from Plaintiff Sleger and Wisconsin Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

233. Plaintiff Sleger and Wisconsin Class members suffered ascertainable losses and actual damages as a direct and proximate result of the Defendant's concealment, misrepresentations, and/or failure to disclose material information.

234. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff Sleger and Wisconsin Class members have suffered actual damages in the amount of the cost to repair the Defect, to replace oven doors, and other incidental and consequential damages recoverable under the law. Furthermore, Plaintiff Sleger and Wisconsin Class members would not have purchased the Frigidaire range or would not have paid as much for it.

235. Defendant's violations present a continuing risk to Plaintiff Sleger and Wisconsin Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

236. Pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiff Sleger and the Wisconsin Class

members seek an order enjoining the Defendants' unfair or deceptive acts or practices, as well as all monetary and nonmonetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested above, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying all of the Defect and Defendant's obligation to repair the Defect, compensating Class members for such repairs, and/or reimbursing Class members the full price of their Frigidaire ranges or the diminution in value of their Frigidaire ranges;

C. Enjoining Defendant, where applicable, from refusing to repair the Defect at no charge to Class members;

D. Ordering Defendant to pay compensatory, exemplary, and/or statutory damages to Plaintiffs and Class members in an amount to be proven at trial;

E. Ordering Defendant to pay restitution to Plaintiffs and Class members;

F. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and Class members;

G. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded, as allowed by law; and

H. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: February 17, 2026

Respectfully submitted,

*/s/ Martha A. Geer*
Martha A. Geer
NC Bar No. 13972
**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 West Morgan Street
Raleigh, North Carolina 27603
Tel: (919) 600-5000
Email: mgeer@brysonpllc.com

Tina Wolfson*
Christopher E. Stiner*
Sarper Unal*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
Email: twolfson@ahdootwolfson.com
Email: cstiner@ahdootwolfson.com
Email: sunal@ahdootwolfson.com

*Application for Pro Hac Vice forthcoming

*Counsel for Plaintiffs and the Putative Classes*